Meagen E. Leary (SBN: 233103)
Marcus O. Colabianchi (SBN: 208698)
Geoffrey A. Heaton (SBN: 206990)
**DUANE MORRIS LLP**
One Market Plaza
Spear Street Tower, Suite 2200
San Francisco, CA 94105-1127
Telephone: (415) 957-3000
Facsimile: (415) 957-3001
Email: gheaton@duanemorris.com

Attorneys for Secured Creditor
5150 ECR LOS ALTOS, LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>5150 ECR GROUP LLC,<br><br>Debtor. | Case No. 21-51196 SLJ<br><br>Chapter 11<br><br>**MOTION TO DISMISS CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, EXCUSE RECEIVER FROM TURNOVER REQUIREMENTS OF 11 U.S.C. § 543**<br><br>Date: TBD[1]<br>Time: TBD<br>Place: Via Video or Teleconference[2]<br>United States Bankruptcy Court<br>280 South First Street<br>Courtroom 9<br>San Jose, California 95113 |

---

[1] Secured Creditor has filed an Ex Parte Application for an order shortening time on the hearing on this Motion. Secured Creditor will serve and provide notice of the hearing consistent with the Court's ruling on its Ex Parte Application.

[2] See Judge Johnson's posted calendar for this hearing at www.canb.uscourts.gov for information on how to attend via video or teleconference.

DM3\8045440.5 R3766/00001

DUANE MORRIS LLP
SAN FRANCISCO

**MOTION TO DISMISS CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, EXCUSE RECEIVER FROM TURNOVER**

Case: 21-51196  Doc# 15  Filed: 09/21/21  Entered: 09/21/21 15:27:20  Page 1 of 20

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| | A. The Loan Secured by the Property. | 2 |
| | B. The Debtor's Multiple Uncured Loan Defaults and Trustee's Sale | 2 |
| | C. Appointment of State Court Receiver | 3 |
| | D. Court-Approved Receiver Sale of the Property | 3 |
| | E. Bankruptcy Filed on Eve of Receiver Sale Closing | 4 |
| | F. Debtor's and Debtor's Manager's Operating Agreements Both Require Consent of All Members in Order for Debtor to File for Bankruptcy. | 5 |
| | G. Debtor Did Not Have The Required Unanimous Member Consents When the Debtor Filed for Bankruptcy | 7 |
| III. | DISCUSSION | 7 |
| | A. The Court Should Dismiss This Case for "Cause" under Section 1112(b). | 8 |
| |    1. The Court should dismiss this case for cause because the Debtor's manager lacked authority under both the Debtor OA and ECR Manager OA to file bankruptcy for the Debtor. | 8 |
| |    2. As a separate and distinct basis for dismissal, the Court should dismiss this case for cause because the Debtor's petition was filed in bad faith. | 10 |
| | B. The Court Should Enter an Order under Section 543(d) Authorizing the Receiver to Remain in Custody and Control of the Property and All Related Personal Property, and Excusing the Receiver from the Requirements of Section 543. | 12 |
| |    1. No Reorganization is Reasonably in Prospect. | 14 |
| |    2. It Is in the Best Interests of Creditors to Excuse the Receiver from Turnover. | 15 |
| IV. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*In re Craighead*
    377 B.R. 648 (Bankr. N.D. Cal. 2007)...................................................................................12

*Dill v. Dime Sav. Bank, FSB (In re Dill)*
    163 B.R. 221 (E.D.N.Y. 1994) ......................................................................................... 13-14

*In re Khan*
    2012 Bankr. LEXIS 2574 (9th Cir. BAP, June 6, 2012).................................................... 8

*Marsch v. Marsch (In re Marsch)*
    36 F.3d 825, 828 (9th Cir. 1994) ........................................................................................10

*Nelson v. Meyer (In re Nelson)*
    343 B.R. 671 (9th Cir. BAP 2006) ...................................................................................... 8

*In re Orchard Hill. Invs., LLC*
    405 B.R. 341 (Bankr. D. Or. 2009) ................................................................................. 13-14

*In re Packard Square LLC*
    575 B.R. 768 (Bankr. E.D. Mich. 2017) ............................................................................13

*In re Pertuset*
    492 B.R. 232 (Bankr. S.D. Ohio 2012) ..............................................................................12

*In re Picacho Hills Util. Co., Inc.*
    No. 2013 Bankr. LEXIS 1733 (Bankr. D.N.M. Apr. 26, 2013).........................................13

*In re Plantation Inn Partners*
    142 B.R. 561 (Bankr. S.D. Ga. 1992) .................................................................................13

*In re Poplar Springs Apts. Ltd.*
    103 B.R. 146 (Bankr. S.D. Ohio 1989)...............................................................................13

*Sino Clean Energy, Inc. v. Seiden (In re Sino Clean Energy, Inc.)*
    901 F.3d 1139 (9th Cir. 2018)..............................................................................................9

*In re Skymark Props. II, LLC*
    597 B.R. 391 (Bankr. E.D. Mich. 2019) ............................................................................14

*SSRE Holdings, LLC v. Zirkle Grp., LLC (In re SSRE Holdings, LLC)*
    2021 Bankr. LEXIS 2346 (9th Cir. BAP, Aug. 26, 2021) ...................................................9

*In re St. Paul Self Storage Ltd. P'ship*
    185 B.R. 580 (9th Cir. BAP 1995)................................................................................. 10-11

*State Street Bank & Trust Co. v. Park (In re Si Yeon Park Ltd.)*
    198 B.R. 956 (Bankr. C.D. Cal. 1996) ........................................................................... 13

*In re Uno Broadcasting Corp.*
    167 B.R. 189 (Bankr. D. Ariz. 1994) ............................................................................. 12

**Federal Statutes**

11 U.S.C. § 101(11)(A) .......................................................................................................... 12

11 U.S.C. § 101(51B) ............................................................................................................... 4

11 U.S.C. § 105(a) .................................................................................................................. 12

11 U.S.C. § 349(a) .................................................................................................................. 12

11 U.S.C. § 543 ................................................................................................ 1-2, 8, 12-13, 15

11 U.S.C. § 543(a) .................................................................................................................. 12

11 U.S.C. § 543(b) .................................................................................................................. 12

11 U.S.C. § 543(d) ..................................................................................................... 1-2, 8, 12-15

11 U.S.C. § 543(d)(1) ............................................................................................................. 12

11 U.S.C. § 1112(b) ..................................................................................................... 1, 7-8, 10

11 U.S.C. § 1112(b)(4) ............................................................................................................. 8

**TO DEBTOR 5150 ECR GROUP LLC AND ITS COUNSEL:**

Secured Creditor 5150 ECR Los Altos, LLC ("Secured Creditor") hereby moves for entry of an order dismissing the captioned chapter 11 case for cause pursuant to 11 U.S.C. § 1112(b), with a 180-day bar from refiling, or, if the Court is not prepared to dismiss this case immediately, entry of an order under section 11 U.S.C. § 543(d) maintaining Kevin Singer ("Receiver") as the duly appointed receiver in the pending Santa Clara Superior Court action entitled <u>5150 ECR Los Altos, LLC v. 5150 ECR Group LLC</u>, Case No. 21CV378563 ("Receivership Action"), and excusing the Receiver from the turnover requirements of section 543. In support of this requested relief, Secured Creditor respectfully submits as follows:

## I. INTRODUCTION

Debtor 5150 ECR Group LLC ("Debtor") owns commercial real property commonly known as 5150 El Camino Real, Los Altos, California ("Property"). Secured Creditor holds a perfected, first priority lien on the Property and related personal property securing a loan in the original principal amount of $41,000,000. On April 27, 2021, based upon the Debtor's multiple monetary and nonmonetary defaults under the subject loan documents, Santa Clara County Superior Court ("State Court") entered an order ("Receivership Order") appointing the Receiver to take possession of and administer the Property.

On September 9, 2021, after months of diligent work by the Receiver and his professionals, the State Court entered an order authorizing and confirming the Receiver's sale of the Property to Secured Creditor for $48,000,000. This order provides that the sale of the Property is cancelled if the sale does not close within 10 days, i.e., by September 19, 2021. On September 14, 2021, in a flagrant attempt to derail the court-approved sale just before its consummation – as well as a trailing trustee's sale of the Property scheduled for September 29 – the Debtor filed a skeleton petition commencing the instant chapter 11 case.

For reasons discussed below, the Court should dismiss this case for cause under section 1112(b). The individual who signed the Debtor's petition, Vahe Tashjian, lacked authority to sign on behalf of either the Debtor or its manager. Separate and independent from the lack of authority to file this case – which is fatal in and of itself – the case should be dismissed with a 180-day bar

to refiling because the petition was filed in bad faith. If, however, the Court does not immediately dismiss this case, then Secured Creditor requests that the Court enter an order under section 543(d) (i) authorizing the Receiver to remain in custody and control of the Property and all related personal property, and otherwise retain all powers and duties set forth in the Receivership Order, and (ii) excusing the Receiver from complying with the requirements of section 543.

## II. FACTUAL BACKGROUND

### A. The Loan Secured by the Property.

The Debtor owns the Property, a 78,950 square foot commercial property. Secured Creditor is the holder of a promissory note ("Note") made by the Debtor in the original principal amount of $41,000,000. See Declaration of Pat Calihan ("Calihan Decl."), filed herewith, **Exhibit A**. The Note is secured by, inter alia, a first priority deed of trust on the Property ("Deed of Trust"). Calihan Decl., **Exhibits B – E**. A copy of the Loan Agreement is attached as **Exhibit F** to the Calihan Decl.

### B. The Debtor's Multiple Uncured Loan Defaults and Trustee's Sale

The Debtor defaulted under the terms of the Note, Deed of Trust, Loan Agreement and other loan documents by, among other things: (i) failing make installment payments due in February 2021 and thereafter; (ii) failing to replenish the Carry Reserve Subaccount, as defined in the Loan Agreement; (iii) failing to pay the loan off on or before the maturity date of May 9, 2021; and (iv) allowing the Property to be encumbered with unpermitted liens in the amounts of a $180,000 and $132,110.51 See Ex Parte Application for (1) Appointment of a Receiver, (2) Temporary Restraining Order , and (3) Order to Show Cause Re Preliminary Injunction and Appointment of Receiver ("Receiver Application") at p. 6, attached as **Exhibit 1** to the Request for Judicial Notice in support of this Motion ("RJN"), filed herewith, and the Declaration of Steven Graines in support of the Receiver Application at p. 7, attached as **Exhibit 2** to the RJN. See also, Calihan Decl., ¶ 10.

To date, the unpaid principal balance due and owing by the Debtor under the Note and other loan documents is $41,000,000. Through September 8, 2021, the total amount due to Secured Creditor was $46,018,138.58. Additional amounts continue to accrue, including, among other

things, non-default rate interest, default interest, legal, administrative and other fees and costs.

On March 18, 2021, Secured Creditor caused a Notice of Default to be recorded against the Property due to the Debtor's defaults under the loan. Calihan Decl., **Exhibit G**. A trustee's sale of the Property was originally scheduled for July 21, 2021. In connection with the Receiver's sale process, the trustee's sale was postponed to September 29, 2021.

### C. Appointment of State Court Receiver

In March of 2021, a prior holder of the Note filed the Receivership Action, and applied for appointment of a receiver to take possession of and administer the Property. Secured Creditor has substituted into the Receivership Action as plaintiff. The Receiver Application asserted numerous reasons for the appointment of a receiver, including, but not limited to, the fact that the Debtor is unable to sell the Property to pay off the loan and is constrained in its ability to raise funds. RJN, **Exhibit 1** at p. 6.

On April 27, 2021, the State Court entered the Receivership Order. RJN, **Exhibit 3**. The Receiver, in turn, took possession of and, since April 2021, has administered the Property in accordance with the terms of the Receivership Order. Since the Receiver's appointment, Secured Creditor and/or its predecessor has funded all expenses of the receivership and the Property. Specifically, Secured Creditor has had to advance all funds needed to pay for (i) the Property's operating expenses and the Receiver's fees and expenses (totaling $265,731.00), (ii) property insurance (totaling $20,230.00), and (iii) lease termination fees (totaling $947,702.90). In total, Secured Creditor has advanced approximately $1,233,663.90 to date. The Debtor has not contributed anything toward these expenses.

### D. Court-Approved Receiver Sale of the Property

With the assistance of his broker, the Receiver spent months marketing the Property for sale and meeting with multiple interested purchasers. See Declaration of Kevin Singer ("Singer Decl."), filed herewith. The "stalking horse" bidder the Receiver ultimately located for the Property, KB Home South Bay, Inc., ended up withdrawing its bid. Secured Creditor was the only qualified bidder at the Sale Hearing, and made the highest bid for the Property in the amount of $48,000,000. Notably, days before the September 9 sale hearing, the Debtor, through Mr.

Tashjian, contacted the Receiver and claimed that the Debtor wanted to participate in the auction. The Debtor, however, was unable to qualify as a bidder, as it could not come up with a deposit of $1.4 million or show proof of funds in excess of $48 million.

On September 9, 2021, the State Court entered in the Receivership Action an order authorizing and confirming the sale of the Property to Secured Creditor as the highest bidder ("Sale Order"). RJN, **Exhibit 4**. The Sale Order, however, set a September 19 deadline to complete the transaction: "In the event that [Secured Creditor] fails to timely close escrow on or before September 19, 2021, the sale of the Property to Buyer is cancelled without further Court Order, and Escrow involving the sale of the Property to [Secured Creditor] is terminated without further Court Order." Id. at p. 2.

### E. Bankruptcy Filed on Eve of Receiver Sale Closing

On September 14, 2021, as Secured Creditor and the Receiver were preparing to execute a sale agreement for the Property, the Debtor filed a skeleton petition commencing the instant chapter 11 case. See Doc# 1. The filing of the Debtor's bankruptcy prevented the sale from closing by the September 19 deadline.[3]

The Debtor confirms in the petition that this case is a Single Asset Real Estate as defined in 11 U.S.C. § 101(51B). Id. at p. 2 of 8. To date, the Debtor has not filed schedules, a Statement of Financial Affairs, or various other required documents. See Doc# 4. The creditor matrix lists only seven entities, one of which is Secured Creditor. It is unknown how many entities on the matrix are listed only for notice purposes. On page 6 of the petition, containing the "List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders," the Debtor has stated "NONE." Secured Creditor has filed a notice of non-consent to the Debtor's use of its cash collateral. See Doc# 10.

---

[3] On September 16, 2021, the Receiver filed in the Receivership Action an Ex Parte Application for an order tolling the September 19 closing deadline in the Sale Order on account of the Debtor's bankruptcy filing. On September 18, 2021, the judge in the Receivership Action signed an order granting this application and staying the September 19 deadline. A true and correct copy of this order is attached as **Exhibit 5** to the RJN.

### F. Debtor's and Debtor's Manager's Operating Agreements Both Require Consent of All Members in Order for Debtor to File for Bankruptcy.

On page 5 of the petition, under "Declaration and signature of authorized representative of debtor", Mr. Tashjian signed as "manager of 5150 ECR Group Manager, LLC." The Debtor's operating agreement ("Debtor OA") provides that 5150 ECR Group Manager, LLC ("ECR Manager") is the Debtor's manager. See **Exhibit A** to the Declarations of Farzin Shakib ("Shakib Decl.") and Mark Yazdani ("Yazdani Decl."), filed herewith at section 5.2(a). Mr. Tashjian, however, did not have authority to sign the petition on behalf of either the Debtor or ECR Manager.

Under the operating agreements of ECR Manager and the Debtor, the Debtor cannot file for bankruptcy without the unanimous consent of ECR Manager's members <u>and</u> the Debtor's members. That is to say, all members must consent to the Debtors' bankruptcy filing at both the ECR Manager level and Debtor level.

<u>Unanimous Consent Required under ECR Manager's Operating Agreement</u>

ECR Manager's operating agreement ("ECR Manager OA") provides at section 5.5:

> **Material Action**. Notwithstanding any other provision of this Agreement and notwithstanding any provision of law that otherwise so empowers the Company, *until the debt evidenced by the first mortgage lien on the Property (the "Debt") is repaid in full, neither the Member, any officer or any other person shall be authorized or empowered, nor shall they permit the Company to, nor to vote in favor of 5150 ECR Group LLC, as borrower, doing for itself, without the prior unanimous written consent of the Members and the Independent Manager, take any Material Action*. When voting with respect to any of the matters set forth in the immediately preceding sentence of this Section 5.5, the Independent Manager shall consider only the interests of 5150 ECR Group LLC, as borrower, and this Company, as applicable, including its creditors.
>
> For purposes of this Section 5.5, "Material Action" means to (i) file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute….

See **Exhibit B** to the Shakib Decl. and Yazdani Decl. (emphasis added).

The ECR Manager OA lists two Members, Dutchints Development LLC ("Dutchints") and Pine Investment Group LLC ("Pine Investment"), and one Independent Manager, Julia McCullough. ECR Manager OA at section 1.18 and pp. 17 – 18. Mr. Tashjian is listed as the principal of Dutchints. Under the above language, so long as Secured Creditor's loan is outstanding, no Member, officer or "other person" can take or vote in favor of the Debtor taking a

DUANE MORRIS LLP
SAN FRANCISCO

DM3\8045440.5 R3766/00001   5

**MOTION TO DISMISS CHAPTER 11 CASE, OR, IN THE ALTERNATIVE, EXCUSE RECOVER/PROMETHEUS VS. CASE NO. 21-50196 FSL**

Case: 21-51196   Doc# 35   Filed: 09/28/21   Entered: 09/28/21 15:27:20   Page 9 of 20

"Material Action," defined to include filing a bankruptcy petition without the unanimous written consent of the members and independent manager. As described below, one of ECR Manager's members, Pine Investment expressly withheld its consent to the Debtor filing for bankruptcy.

Unanimous Consent Required under Debtor's Operating Agreement

The Debtor's Operating Agreement ("Debtor OA") likewise requires the unanimous consent of the Debtor's members in order for the Debtor to file for bankruptcy. In particular, the Debtor OA provides, ***"Notwithstanding any other provisions of [the Operating] Agreement***, the Manager and the [Debtor] shall each conduct their operations as a Special Purpose Bankruptcy Remote Entity and as such shall take all actions necessary to cause the [Debtor] and Manager, to comply with, and will refrain from taking any actions in violation of, the conditions set forth in the defined term 'Special Purpose Bankruptcy Remote Entity'." Debtor's operating agreement ("Debtor OA") ¶ 5.6(f) (**Exhibit A** to Shakib Decl. and Yazdani Decl.) (emphasis added). The Debtor's "Manager" is ECR Manager. See Debtor OA at section 5.2(a).

The Debtor OA defines the term "Special Purpose Bankruptcy Remote Entity" as a limited liability company "which at all times since its formation and at all times thereafter … vi) has not, ***and without the unanimous consent of all of its partners, directors or members***, the Manager (including its Independent Manager), as applicable, ***will not (i) file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute***…." Id. at p. 11 (emphasis added).

Accordingly, the Debtor OA prohibits the Debtor's Manager, i.e., ECR Manager, from causing the Debtor to file for bankruptcy without the <u>unanimous</u> consent of all the Debtor's members.[4]

---

[4] Although paragraph 5.1(c) of the Debtor OA (Authority of Manager) prohibits the Manager from filing a bankruptcy petition unless 67% "of the Class A Units or more have consented to the taking of such action[,]" this provision is overridden by the subsequent paragraph 5.6(f) and its "[n]otwithstanding any other provisions of this [Operating] Agreement" language.

### G. Debtor Did Not Have The Required Unanimous Member Consents When the Debtor Filed for Bankruptcy

As set forth in the Shakib Decl. and Yazdani Decl., Pine Investment, one of the Debtor's members – and also one of ECR Manager's members – expressly withheld its consent to the Debtor filing for bankruptcy. In fact, on September 8, 2021, on the evening before the Sale Hearing, upon learning that Mr. Tashjian intended to have the Debtor file for bankruptcy, Mr. Shakib sent Mr. Tashjian an email expressly declining to consent on behalf of himself, Mr. Yazdani and Pine Investment. See Shakib Decl., **Exhibit C**. Mr. Shakib stated in the email that "[t]he filing of a petition in bankruptcy would be in violation of the terms of the operating agreements." Id. (emphasis added)

Notably, paragraph 5.6(f) of the Debtor OA provides that for so long as the loan is outstanding, the Debtor's lender "is and shall be an intended third-party beneficiary of the provisions of Section 5.6(f) and any and all other 'Special Purpose Bankruptcy Remote Entity' … provisions of this [Operating] Agreement (collectively, the 'SPE Provisions') and ***Lender may enforce such SPE Provisions***." Id. (emphasis added). Likewise, so long as the loan is outstanding, Secured Creditor is an "intended third party beneficiary" of section 5.5 of the ECR Manager OA and other "special purpose" provisions of that agreement. See ECR Manager OA at § 5.7.

### III. DISCUSSION

The Court should dismiss this case for "cause" under section 1112(b) because the Debtor's Manager, ECR Manager, lacked authority to file bankruptcy for the Debtor without the unanimous written consent of ECR Manager's and the Debtor's respective members. This flaw is fatal to this case and justifies dismissal in and of itself. However, as a separate and additional basis for dismissal, the Court should dismiss this case because the filing of the Debtor's petition was a bad faith effort by the Debtor and Mr. Tashjian to derail the court-approved sale of the Property, among several other bad faith criteria described below.

In the alternative, if the Court does not dismiss this case immediately (although it should), then Secured Creditor requests that the Court enter an order under section 543(d) (i) authorizing the Receiver to remain in custody and control of the Property and all related personal property,

and otherwise retain all powers and duties set forth in the Receivership Order, and (ii) excusing the Receiver from complying with the requirements of section 543.

### A. The Court Should Dismiss This Case for "Cause" under Section 1112(b).

Under section 1112(b), a bankruptcy court "shall" convert a chapter 11 case to a case under chapter 7, or dismiss the case, "whichever is in the best interests of creditors and the estate, ***for cause***, unless the court determines that the appointment … of a trustee or an examiner is in the best interests of creditors and the estate." (emphasis added) Section 1112(b) establishes a two-step analysis: "First, it must be determined that there is 'cause' to act. Second, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'" Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. BAP 2006).

Here, dismissal is the appropriate remedy, because the Debtor's petition was filed without authority in violation of the ECR Manager OA and the Debtor OA. Although the lack of authority justifies immediate dismissal in and of itself, as a separate and additional basis for dismissal, the petition was unquestionably filed in bad faith. The best interests of creditors – including, in particular, Secured Creditor, who is by far the largest (and perhaps only) creditor in this single asset case – are best served by dismissal so that the court-approved sale of the Property can be completed.[5]

#### 1. The Court should dismiss this case for cause because the Debtor's manager lacked authority under both the Debtor OA and ECR Manager OA to file bankruptcy for the Debtor.

Section 1112(b)(4) sets out a non-exhaustive list of factors that can constitute "cause." A bankruptcy court, moreover, "has wide discretion in determining what constitutes cause … under § 1112(b)." In re Khan, 2012 Bankr. LEXIS 2574, *14 (9th Cir. BAP, June 6, 2012). In this instance, cause exists to dismiss this case because the Debtor's manager lacked authority to cause the Debtor to file for bankruptcy.

"State law determines who has the authority to file a voluntary bankruptcy petition on behalf of a debtor." Sino Clean Energy, Inc. v. Seiden (In re Sino Clean Energy, Inc.), 901 F.3d

---

[5] The Debtor's list of 20 largest unsecured creditors lists "-NONE-." See Doc. #1 at p. 6.

1139, 1141 (9th Cir. 2018).  Here, the Debtor is a California limited liability company.  See Operating Agreement at p. 1, 1st Recital.

The Ninth Circuit Bankruptcy Appellate Panel recently addressed the issue of whether a manager of a California LLC had authority to file bankruptcy for the LLC.  The BAP, citing to the Ninth Circuit's Sino Clean Energy decision, explained:

> California's Revised Uniform Limited Liability Company Act governing limited liability companies provides that, "[e]xcept as **otherwise provided in this section**," the operating agreement governs, among other matters, the relations of its members and the activities of the limited liability company.

SSRE Holdings, LLC v. Zirkle Grp., LLC (In re SSRE Holdings, LLC), 2021 Bankr. LEXIS 2346, *9 (9th Cir. BAP, Aug. 26, 2021) (emphasis in original, citing Cal. Corp. Code § 17701.10(a)).

While the Cal. Corp. Code sets forth default rules for control of LLCs, "[m]embers of a limited liability company can … adopt a different rule within an operating agreement." Id., citing Cal. Corp. Code § 17701.10.  In SSRE, the BAP ultimately determined that under terms of the debtor's operating agreement, the manager had a "broad, general grant of authority … that specifically was designated to be without limitation." Id. at *11.  Consequently, the operating agreement granted the manager implicit authority to file bankruptcy for the debtor. Id. at *12.

Here, there is no provision in the Cal. Corp. Code that overrides the terms of the ECR Manager OA or Debtor OA.  Moreover, in stark contrast to the manager in SSRE, the Debtor's Manager did not have a broad, general grant of authority to act on behalf of the Debtor.  Rather, the powers of the Debtor's Manager, ECR Manager, are highly restricted with respect to its ability to file bankruptcy for the Debtor.  As set forth above, the unanimous consent of both ECR Manager's and the Debtor's respective members are required before there exists the requisite authority for the Debtor to file bankruptcy.

The requisite unanimous consent, however, did not exist.  Pine Investment, a member of both ECR Manager and the Debtor, through its members Messrs. Yazdani and Shakib, explicitly withheld consent.  Thus, the Debtor's Manager, ECR Manager, lacked authority to file bankruptcy for the Debtor whether through Mr. Tashjian or anyone else.  The Debtor's filing was improper and invalid, and the Court should dismiss this case for cause.

### 2. As a separate and distinct basis for dismissal, the Court should dismiss this case for cause because the Debtor's petition was filed in bad faith.

Courts hold overwhelmingly that "a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal." Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994). Bankruptcy courts dismiss cases under section 1112(b) where they are filed for "tactical reasons unrelated to reorganization." Id. The central inquiry is "whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." Id. While the statute does not explicitly use the term "bad faith", "the case law refers to these dismissals as dismissals for 'bad faith' filing[.]" Id.

In deciding whether a case was filed in bad faith, courts look at a variety of factors, including but not limited to whether: "(1) the debtor has only one asset; (2) the debtor has an ongoing business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case is essentially a two-party dispute capable of prompt adjudication in state court." In re St. Paul Self Storage Ltd. P'ship, 185 B.R. 580, 582-83 (9th Cir. BAP 1995).

In this instance, there is no dispute that the Debtor's petition was filed in bad faith for wholly tactical reasons. The Debtor's September 14 petition date was carefully timed so that the Receiver and Secured Creditor would be unable to complete the sale of the Property, and Secured Creditor would be unable to obtain dismissal of the case, before the Sale Order's September 19 closing deadline expired. This bankruptcy filing is an abuse of the system designed to undo months of work by the court-appointed Receiver and his professionals under the supervision of the State Court.

The Debtor and Mr. Tashjian had every opportunity to participate in the receivership proceedings in State Court, and filed the bankruptcy petition in an effort to collaterally attack the Sale Order. Simply put, the filing of this case was gamesmanship – a litigation tactic to deter and harass Secured Creditor and the Receiver.

As further evidence of bad faith, <u>all</u> of the St. Paul Self Storage bad faith factors are present here:

(i) <u>The Debtor has only one asset</u>. By the Debtor's admission, this case is a Single Asset Real Estate. The Property and all related personal property are collateral for Secured Creditor's loan.

(ii) <u>The Debtor does not have an ongoing business to reorganize</u>. As detailed in the Receiver Application (RJN, **Exhibit 1** at pp. 4-7), the Debtor was unable to operate the Property as a profitable venture, sell the Property, or otherwise service its monthly loan obligations, allowing impermissible liens to attach to Secured Creditor's collateral. The Debtor's bankruptcy filing is purely an effort to stymie the court-approved sale of the Property at the thirteenth hour.

(iii) <u>There are few unsecured creditors</u>. While no schedules have been filed, the creditor matrix lists only seven entities, including Secured Creditor. It is unknown how many on the matrix are actually creditors or were only listed for notice purposes. Notably, the Debtor's list of 20 largest unsecured creditors lists "NONE." <u>See</u> Doc. #1 at p. 6. Nonetheless, there is no indication that this case was filed to address any unsecured debt the Debtor may have. Rather, it was filed merely to thwart months of work by the Receiver under the supervision of the State Court.

(iv) <u>The Debtor is unable to sustain a plan of reorganization or make adequate protection payments</u>. The $41 million loan is fully mature and accruing default rate interest, fees, costs and expenses. There is no way that the Debtor is capable of sustaining a plan of reorganization or making adequate protection payments to Secured Creditor. Indeed, Secured Creditor and/or its predecessor has had to advance all operating expenses for the Property, as well as all fees and expenses of the Receiver, since the Receiver was appointed. The Debtor, in contrast, was unable to pay for even the property insurance bill.

(v) <u>This case is a two-party dispute capable of prompt resolution in state court</u>. This case is dispute between the Debtor and Secured Creditor. Secured Creditor is the Debtor's senior secured creditor with a lien encumbering the Property and related personal property. The State Court was addressing this dispute more than adequately through the Receivership Action. This case should be dismissed so that the sale may be completed and the Receivership Action resolved.

The tactical timing of the Debtor's bankruptcy filing, combined with fulfillment of all of the other indicia of bad faith set forth above, establish that the Debtor's petition was filed in bad

faith.  Accordingly, the Court should dismiss this case for cause.  Moreover, in order to prevent the Debtor and Mr. Tashjian from engaging in this conduct a second time (once the Receiver and Secured Creditor are able to get the sale of the Property back on track), the Court should enter a 180-day bar to the Debtor filing another bankruptcy petition.  See In re Craighead, 377 B.R. 648, 657 (Bankr. N.D. Cal. 2007) ("[S]ection 349 gives the bankruptcy court authority to dismiss a bankruptcy case with a bar preventing the debtor from refiling in cases of abuse."); In re Pertuset, 492 B.R. 232, 258-59 (Bankr. S.D. Ohio 2012) ("A court may dismiss a bankruptcy case with prejudice to refiling, pursuant to Sections 105(a) and 349(a)");

**B. The Court Should Enter an Order under Section 543(d) Authorizing the Receiver to Remain in Custody and Control of the Property and All Related Personal Property, and Excusing the Receiver from the Requirements of Section 543.**

If the Court does not immediately dismiss this case, Secured Creditor respectfully requests that the Court enter an order under section 543(d) (i) authorizing the Receiver to remain in custody and control of the Property and related personal property of the receivership estate, and otherwise retain all powers and duties set forth in the Receivership Order; and (ii) excusing the Receiver from the complying with the requirements of section 543 of the Bankruptcy Code.

Generally, following commencement of a bankruptcy case, a "custodian," including a receiver,[6] is required to turn over all property of the debtor within the custodian's custody and control to the trustee or debtor in possession, and is prohibited from taking any action in administration of this property except as necessary to preserve the property.  See 11 U.S.C. § 543(a)-(b); In re Uno Broadcasting Corp., 167 B.R. 189, 200 (Bankr. D. Ariz. 1994).  Section 543(d)(1), however, authorizes a bankruptcy court, in its discretion, to excuse a receiver or other custodian's compliance with these requirements "if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property[.]"

---

[6] The Bankruptcy Code defines the term "custodian" to include a "receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title." 11 U.S.C. § 101(11)(A).

DUANE MORRIS LLP
SAN FRANCISCO

Section 543(d) is "intended to provide flexibility when there is no useful purpose to be served by turnover[.]" In re Plantation Inn Partners, 142 B.R. 561, 564 (Bankr. S.D. Ga. 1992). The central inquiry under section 543(d) is whether requiring a receiver to turn over the property in its possession is in the interests of creditors.

In determining whether to excuse a custodian's compliance with the requirements of section 543 (collectively referred to hereafter as "turnover"), courts consider a number of factors, including: (1) the likelihood of a reorganization; (2) the probability that funds required for reorganization will be available; (3) whether there are instances of mismanagement by the debtor; (4) whether turnover would be injurious to creditors; and (5) whether the debtor will use the turned over property for the benefit of its creditors. See, e.g., Dill v. Dime Sav. Bank, FSB (In re Dill), 163 B.R. 221, 226-27 (E.D.N.Y. 1994) (receiver allowed to stay in possession of properties where lender had to advance funds required to maintain real property and debtor had mismanaged property); In re Packard Square LLC, 575 B.R. 768, 781-82 (Bankr. E.D. Mich. 2017) (receiver kept in place where debtor had no money available to use to do any work towards completing project on subject property or to fund its chapter 11 case); In re Picacho Hills Util. Co., Inc., No. 2013 Bankr. LEXIS 1733 at *19-24 (Bankr. D.N.M. Apr. 26, 2013) (excusing receiver from turnover where turnover would prevent receiver from completing pending sale of property); In re Orchard Hill. Invs., LLC, 405 B.R. 341, 353 (Bankr. D. Or. 2009) (receiver excused from turnover where, inter alia, debtor defaulted on subject loan and failed to cure any defaults); In re In re Poplar Springs Apts. Ltd., 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989) (custodian left in custody of apartment building where interests of creditors best served by excusing receiver from turnover).

When deciding whether to preserve the status quo and leave a receiver in place, a bankruptcy court must examine the interests of all secured and unsecured creditors. See State Street Bank & Trust Co. v. Park (In re Si Yeon Park Ltd.), 198 B.R. 956, 964 (Bankr. C.D. Cal. 1996). However, where the vast majority of a debtor's debts are owed to one party, that party's interests are given great weight. See Poplar Springs, 103 B.R. at 150 ("Although the interest of unsecured creditors must be protected, the overwhelming amount of these debtors' obligations are to [secured

DUANE MORRIS LLP
SAN FRANCISCO

DM3\8045440.5 R3766/00001

13

MOTION TO DISMISS CHAPTER 11 CASE, OR, IN THE ALTERNATIVE,
EXCUSE RECEIVER FROM TURNOVER — CASE NO. 21-51196

Case: 21-51196    Doc# 15    Filed: 09/21/21    Entered: 09/21/21 16:27:50    Page 17 of 20

lender]. Therefore, it is primarily [secured lender's] interests which must be balanced against the debtors' rights.").

Furthermore, in cases where the custodian is a receiver appointed by a state court prior to the bankruptcy, "bankruptcy courts have considered the length of the time that the receiver has acted under a receivership order, and what, if anything, the receiver has done, and the impact of these considerations on the other relevant factors." In re Skymark Props. II, LLC, 597 B.R. 391, 398 (Bankr. E.D. Mich. 2019); see also Orchards Vill. Invs., 405 B.R. at 353 (excusing a state court receiver from turnover where receivership had been in place for approximately six months prior to bankruptcy filing and had substantially improved the conditions causing receiver's appointment).

Notably, the interests of a debtor are not taken into account when evaluating a motion under section 543(d)(1). See Dill, 163 B.R. at 225; see also Collier on Bankruptcy P 543.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("[S]ection 543(d)(1) omits consideration of the interests of the debtor.").

In this instance, more than adequate grounds exist to excuse the Receiver from turnover.

### 1. No Reorganization is Reasonably in Prospect.

There is little doubt that the Debtor will be unable to generate sufficient income for a successful reorganization in this case. The Debtor has not made any payments on the $41 million loan since before February 2021, and the entire loan is due and payable, together with accruing default rate interest, fees, costs and expenses. Moreover, all rents and other income derived from the Property constitute Secured Creditor's cash collateral, and Secured Creditor does not consent to the use or expenditure of its cash collateral by the Debtor.

Even if the Property were turned over to the Debtor, there is no way it could provide adequate protection to Secured Creditor. The Debtor's multiple monetary and nonmonetary defaults, combined with its inability to sell or generate income from the Property, led to the Receiver's appointment in the first place. Nothing about the Debtor's inability to perform has changed since then. Indeed, Secured Creditor and/or its predecessor has had to advance all funds needed to fund the Property's operations and the Receiver's fees and expenses since the Receiver's

1 appointment. There is no reorganization reasonably in prospect, and the Court should excuse the Receiver from turnover.

### 2. It Is in the Best Interests of Creditors to Excuse the Receiver from Turnover.

Preserving the status quo and excusing the Receiver from turnover is in the best interests of creditors. This case is a two-party dispute, and was filed as a last ditch stalling effort to prevent the sale of the Property from closing. The Debtor is unable to manage its finances, service the loan, manage the Property, or sell the Property – again, all factors that led to the Receiver's appointment back in April 2021. During the Debtor's tenure in control of the Property, it succeeded at nothing other than collecting multiple, ongoing defaults under the loan and accruing default interest, fees, costs and expenses. With this track record, creditors – including, in particular, Secured Creditor – are not well-served by having the keys handed back to the Debtor. The Debtor has no business operating the Property.

In contrast to the Debtor's woeful mismanagement of the Property and its financial affairs, for nearly five months the Receiver has dutifully managed, maintained and operated the Property while actively marketing the Property for sale. See Singer Decl. The Receiver's months of hard work resulted in a court-approved sale of the Property to Secured Creditor as the highest bid.

The Court should excuse the Receiver from turnover so that the financial stability and accountability the Receiver achieved are not thrown away, and – just as importantly – so that the Debtor's bad conduct in filing this case is not rewarded. For all the foregoing reasons, it is in the best interests of creditors to excuse turnover and keep the Receiver in place.

## IV. CONCLUSION

The Debtor's manager lacked authority to file a bankruptcy petition for the Debtor. To make matters worse, the Debtor's bankruptcy petition was a bad faith filing purposefully designed to derail the Receiver's court-approved sale of the Property – the culmination of months of diligent work by the Receiver, his professionals, and the State Court. For all these reasons, the Court should enter an order dismissing this chapter 11 case for cause with a 180-day bar to refiling. If, however, the Court does not immediately dismiss this case, then it should enter an order under section 543(d) (i) excusing the Receiver from complying with the requirements of 11 U.S.C. § 543,

DUANE MORRIS LLP
SAN FRANCISCO

DM3\8045440.5 R3766/00001

15

**MOTION TO DISMISS CHAPTER 11 CASE, OR, IN THE ALTERNATIVE,
EXCUSE RECEIVER FROM TURNOVER – CASE NO. 21-51096**

Case: 21-51196    Doc# 15    Filed: 09/21/21    Entered: 09/21/21 16:27:20    Page 19 of 20

and (ii) authorizing the Receiver to remain in custody and control of the Property and all related personal property, and otherwise retain all powers and duties set forth in the Receivership Order.

Dated: September 21, 2021

**DUANE MORRIS LLP**

By: /s/ Geoffrey A. Heaton (206990)
GEOFFREY A. HEATON
MEAGEN E. LEARY
MARCUS O. COLABIANCHI

Attorneys for Secured Creditor
5150 ECR LOS ALTOS, LLC