DIEMER & WEI, LLP
Kathryn S. Diemer, SBN 133977
Susan B. Luce, SBN120843
55 South Market St., Ste 1420
San Jose, CA 95113
Tel: 408-971-6270
Fax:408-971-6271
kdiemer@diemerwei.com
sluce@diemerwei.com

Attorneys for Interested Party
Palo Alto University

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>5150 ECR Group, LLC,<br>                Debtor. | Case No. 21- 51196 SLJ<br><br>Chapter 11<br><br>JOINDER OF INTERESTED PARTY PALO ALTO UNIVERSITY IN MOTION TO DISMISS<br><br>Time : 2:30 P.M.<br>Date: October 7, 2021<br>Judge: Hon. Stephen L. Johnson via tele/videoconference |

      Palo Alto University [hereinafter cited as "PAU"] is one of the tenants in the building which 5150 ECR Group, LLC has identified as the sole asset in its single asset real estate case filed before this Court. On April 22, 2021, Judge Christopher Rudy, Santa Clara County Superior Court, entered the receivership order appointing a Receiver to take possession of and administer the property located at 5150 El Camino Real, Los Altos, California [hereinafter cited as "the Property"] owned by 5150 ECR Group, LLC [hereinafter cited as the "Debtor"]. At the time the

1

receivership order was entered, Palo Alto University was essentially at the tail end of the negotiations for a lease termination agreement with Debtor. The lease termination agreement between PAU and the Debtor is necessary to allow the Debtor, or any buyer to develop the property, given the long term nature of PAU's lease.

The Receiver, as part of his efforts to market the Property to obtain the highest and best price, completed the negotiation with PAU. The lease termination agreement is, in essence, a two part agreement. Funds were placed in escrow to fund the lease termination payment, with payments to occur upon several milestones. The milestones relate to PAU's exiting the property. PAU remains as a tenant at the Property for a period of time, while their new premises are completed. The Receiver has been operating as PAU's landlord, providing property management services. PAU's agreement is with the Receiver, authorized and approved by Judge Rudy, as part of the state court action.

PAU is filing this joinder in secured creditor 5150 ECR Los Altos, LLC's [hereinafter cited as "Secured Creditor"] Motion to Dismiss Chapter 11 Case, or in the Alternative Excuse Receiver from Turnover Requirements of 11 U.S.C. Section 543, for the limited purpose of supporting the Secured Creditor's request to excuse the Receiver from Turnover.

**IT IS IN THE BEST INTERESTS OF THE BANKRUPTCY ESTATE THAT THE RECEIVER RETAIN CONTROL UNTIL SUCH TIME AS THE COURT DECIDES THE ISSUES OF WHETHER OR NOT THE BANKRUPTCY FILING WAS AUTHORIZED, AND/OR WHETHER THE BANKRUPTCY FILING WAS IN BAD FAITH.**

11 U.S.C. Section 543 requires any custodian of Debtor's assets to turn over those assets upon the Debtor's filing. The bankruptcy court has both the right, and obligation, to determine on a case by case basis, to determine who should best be charged with the handling of those assets. To make that determination the Court is charged with looking solely to the interests of the creditors, not the debtor.

> Regardless of what factors are used to aid the court in its decision, the paramount and sole concern is the interests of all creditors. See generally KCC-Fund V., Ltd., 96 B.R. at 239 (on the issue of who should be in charge of funds held by the receiver, the court stated that "[o]f necessity, this must be on a case by case analysis and no generic rule can be proclaimed."). The interests of the debtor are not to be considered in the court's decision. *See Dill*, 163 B.R. at 225; *Foundry of Barrington P'ship v. Barrett (In re Foundry of Barrington P'ship)*, 129 B.R. 550, 557 (Bankr. N.D. Ill. 1991). Compare 11 U.S.C. §§ 523(d) & 305.
>
> *In re Falconridge, LLC* (Bankr.N.D.Ill. Nov. 8, 2007, No. 07-bk-19200) 2007 Bankr. LEXIS 3755, at *22.

The northern district of Illinois bankruptcy court in *Falconridge* characterized the factors to consider in determining whether to retain the Receiver, or allow the Debtor to control, as follows: a) likelihood of reorganization, b) whether the debtor mismanaged the property, c) whether turnover would injured creditors, d) whether debtor would use the property for the creditors benefit, e) whether rehare are avoiding issues that would be affected because a receiver does not possess avoiding powers, and f) the fact that the automatic stay deactivates the state court receiver action.

> The widely cited In re Orchards Vill. Invs., LLC 405 B.R. 341 (Bank. Or. 2009) identified the main factors as:
>
> > Reorganization policy generally favors turnover of business assets [**29] to the debtor in a chapter 11 case. See 5 Collier on Bankruptcy P 543.05 (15th ed. rev. [*353] 2009). If turnover is opposed, courts consider a number of factors in determining whether to order turnover, including "(1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the property for the benefit of its creditors; and (3) whether there has been mismanagement by the debtor." Id. at 543-12. See, e.g., Dill v. Dime Savings Bank, FSB (In re Dill), 163 B.R. 221, 225 (E.D.N.Y. 1994), and cases cited therein.
>
> *In re Orchards Vill. Invs., LLC* (Bankr.D.Or. 2009) 405 B.R. 341, 352-353. [Hereinafter cited as "Orchard Village"]

The Court in *Orchard Village* faced a similar situation to the case at hand. In Orchard Village, a Receiver was appointed by a state court because of Debtor's failure to make payments on the loan, failure to pay taxes, and other payment failures. Additionally, there were questions of

Case: 21-51196    Doc# 39    Filed: 10/05/21    Entered: 10/05/21 19:14:32    Page 3 of 5

mismanagement by the Debtor. The *Orchard Village* court denied turnover, allowing the Receiver to continue to handle the financial matters of the Debtor's estate. *See Orchard Village, supra* at 34. In *In re Wallace*, 2011 Bankr. Lexis 4382 (Bankr. ID 2011) the Court addressed a similar situation to the one at hand – a real estate case where the income was insufficient to cover the costs of operation, combined with concern about Debtor's operational abilities, resulted in the Court finding that the Receiver should continue in possession, custody and control of the properties.

In *In re Malek & Chahayed Chiropractic Corp*., 2009 Bankr. Lexis 4511 (Bankr. C.D.Cal. 2009), the Court identified the length of time the receiver had been operating a business before the bankruptcy was filed, as one of the most compelling factors in determining if the Receiver should continue post bankruptcy filing.

> One of the most compelling factors in determining whether a receiver should continue with a case or if the bankruptcy trustee should take over is how long the receiver has been operating a business before the bankruptcy was filed. Choice is being run and has been run for the past ten months by a state court receiver. This state court receiver has worked to prevent dissipation of Choice's assets and worked towards recovering assets for the benefit of creditors. Malek claims that the receiver is engaged in a vendetta against him and is only interested in his own fees. Malek, has, however, never filed these complaints or even responded on the merits to the receiver's allegations in the Superior Court. Based on the evidence before this court, there is no evidence to support Malek's claims. David Pasternak, the receiver, testified and answered all questions any party to these proceedings put to him. Pasternak is a highly qualified receiver and has been appointed in over 300 receiverships of various kinds and complexities. His testimony was knowledgeable, credible, fair, and balanced. He has worked with trustees in many bankruptcy cases and has been left in as a receiver in a number of bankruptcy cases, so he is familiar with how a bankruptcy case compares to a state court receivership.
>
> *In re Malek & Chahayed Chiropractic Corp*. (Bankr.C.D.Cal. Nov. 16, 2009, No. 1:09-bk-21967-MT) 2009 Bankr. LEXIS 4511, at *10-11. [Hereinafter cited as "Malek"]

Although the *Malek* case addressed a slightly different factual pattern, in that the Court was determining whether or not the Receiver should stay in place rather than appointing a Chapter 7 trustee, the *Malek* case provides clarity on the considerations before this Court. The Malek court

looked to the problems of waste of resources, and duplication of effort where a capable and experienced receiver had been operating a business for a period of time.  The *Malek* court ruled in favor of allowing the receiver to continue.

    PAU is concerned that transfer of the property from the Receiver to the Debtor will inhibit PAU's ability to continue on with its' ordinary course of business during the period of time until its lease ends.  PAU pays it's rent monthly to the Receiver.  PAU is moving forward with the work necessary to leave the 5150 premises, and is hopeful that it will be able to do so early, as allowed under the Lease Termination Agreement.  When ordinary course issues arise, PAU communicates those to the property manager engaged by the Trustee, as it has done for the last six months.  The documentation which was filed by 5150 was not reassuring that PAU would be able to continue in its' ordinary course activities as required under the Lease Termination Agreement.  PAU's lease and lease termination agreement were not mentioned in the executory contract portion of the schedules. 5150 did not identify the tenants, the property manager or identify monies that would allow the ordinary course activities to continue for the tenants.  PAU asks that this Court, in consideration of PAU, and other interested parties, allow the receiver to continue in his role.

October 5, 2021                                                Respectfully submitted,

                                                                                     DIEMER & WEI, LLP

                                                            _____/Kathryn S. Diemer/_____
                                                             Kathryn S. Diemer, Esq.
                                                             Attorney for Interested Party
                                                             Palo Alto University